JESSE W. ENGLISH AND BETTY J. ENGLISH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
English v. Commissioner
Docket No. 20548-90
United States Tax Court
T.C. Memo 1993-111; 1993 Tax Ct. Memo LEXIS 109; 65 T.C.M. (CCH) 2160; March 29, 1993, Filed *109 For petitioner: Don T. Cates. For respondent: Abbey B. Garber. SCOTT SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax for the taxable years 1986 and 1987 as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec. 6661
1986
$ 22,271.37
$ 1,113.57
[1]
$ 5,568
1987
177.11
8.86
[1]
--  All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. The parties agreed to the adjustment for 1987 for automobile expenses as determined in the notice of deficiency. The only other adjustments in 1987 were for a medical expense deduction and an addition to tax under section 6653(a)(1)(A) and (B). Petitioners offered no evidence with respect to the 1987 adjustments. If petitioners *110 have not conceded these adjustments, we hold for respondent on these issues for 1987 because of petitioners' failure of proof. Some of the issues raised by the pleadings for the year 1986 have been disposed of by agreement of the parties, leaving for decision: (1) Whether petitioners are entitled to treat the gain on the sale of certain real property as long-term capital gain; (2) whether petitioners are liable for the additions to tax for negligence under section 6653(a)(1)(A) and (B) for 1986; and (3) whether petitioners are liable for the addition to tax for a substantial understatement of income tax under section 6661 for 1986. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, resided in Forney, Texas, when the petition in this case was filed. On October 19, 1987, petitioners filed their joint 1986 Federal income tax return with the Internal Revenue Service Center in Austin, Texas. On October 19, 1988, petitioners filed their joint 1987 Federal income tax return with the Internal Revenue Service Center in Austin, Texas. Petitioners' 1986 and 1987 income tax returns were prepared by a certified public accountant. *111 In 1978, petitioners purchased for $ 96,553 approximately 123 acres of land (the property) in Kaufman County, Texas, from the parents of petitioner Betty J. English. Petitioners' basis in the property was $ 784.96 per acre. Originally, petitioners used the property to raise hay. Petitioners later decided to subdivide the property and sell lots. Petitioners intended to develop the property in three phases. Beginning in 1984 petitioners subdivided 42 acres of the property. They named the subdivision Lone Elm Estates. Petitioners opened a checking account under the name of Lone Elm Estates. Kaufman County required that roads and water service be made available when property is subdivided. Petitioners looked into the cost of installing an asphalt road as compared to a concrete road and determined that the initial cost of an asphalt road would be less than that of a concrete road, but that the cost of keeping the concrete road in good repair would be less than for an asphalt road. Petitioners decided to install a concrete road. The value of the lots was higher because of the installation of a concrete road rather than an asphalt road. Petitioners also installed water lines. *112 The total cost to petitioners of the road and water lines was approximately $ 86,000. These improvements were completed in late 1985 or early 1986. Petitioners divided the 42 acres of the property subdivided in 1984 into 24 lots. An additional 42 acres were divided into 22 lots around 1990. Petitioners continued to do some farming on the property not subdivided. During 1984, petitioners sold 10.32 acres consisting of six lots to a builder for $ 80,000 or $ 7,751.94 per acre. At the time of this sale the commitment for the concrete road and water services had been made, but the installation had not begun. Petitioners gave a commitment to complete the installation of the concrete road and water services to the person to whom they sold six lots comprising 10.32 acres. They sold the six lots in one sale to raise the money to install the concrete road and the water services. In 1985, petitioners sold a 1.72-acre lot for $ 20,000 or $ 11,627.91 per acre. In 1986, petitioners sold 12 lots totaling 20.92 acres for $ 247,367 (1986 sales) or $ 11,924 per acre. In 1987, petitioners sold three additional lots for a total of $ 59,141.45 (1987 sales). Petitioners had never attempted *113 to develop any land prior to the development of the Lone Elm Estates. Prior to and during 1986 and 1987, petitioners owned an institutional wholesale grocery store, English Institutional Food, and operated a cafe called English City Cafe. Petitioners on their 1986 return reported on Schedule D under "Other Transactions" the sale of "20.92 acres" acquired in 1978 for a sales price of $ 247,367 with a cost of $ 64,819.85 resulting in a gain of $ 182,547.15 which was reported as long-term capital gain. On part III of Schedule D they deducted 60 percent of the reported gain showing the amount of $ 73,018.86 to be carried to line 13 on page 1 of their 1986 return. Petitioners reported on line 8 of their 1986 return interest income of $ 3,543.58; on line 12, Business Income or (Loss) from Schedule C, a loss of $ 10,546.20; on line 13, Capital Gain or (Loss) from Schedule D, a gain of $ 73,018.86, and on line 19, Farm Income or (Loss) from Schedule F, a loss of $ 19,715.18. The business loss of $ 10,546.20 reported by petitioners resulted from a profit of $ 21,763.03 from English Institutional Foods with sales of $ 252,073.29 and a loss of $ 32,309.23 from English City Cafe with sales *114 of $ 203,999.94. The Schedule F, Farm Income and Expenses, showed the principal product as oats, no sales, expenses of $ 8,036, and taxes of $ 8,171.91. On the 1987 return, petitioners reported on Schedule C (Profit or (Loss) From Business or Profession) an ordinary gain of $ 44,978.60 from the 1987 sale of lots in the Lone Elm Estates subdivision. On Schedule C of their 1987 return, petitioners stated they were in the "residential development" business. Respondent in the notice of deficiency determined that for the year 1986 petitioners had gross receipts from Schedule C sales of subdivided land rather than capital gains, because they had not established that they met the requirements of section 1237. Respondent adjusted petitioners' income as reported accordingly. OPINION Section 1237[1] is a special capital gains provision that allows a qualifying taxpayer to sell lots from a single tract held for investment without any of the resulting gain being taxed as ordinary income solely because the tract was subdivided or because he actively participated in the sales. Pointer v. Commissioner, 48 T.C. 906, 912, 913 (1967) (citing sec. 1.1237-1(a)(1), *115 Income Tax Regs.), affd. 419 F.2d 213 (9th Cir. 1969). *116 In order for a taxpayer to qualify for the special treatment under section 1237, the following requirements must be met: (1) The taxpayer may not have previously held any part of the tract primarily for sale in the ordinary course of his trade or business unless such tract at such previous time would have been covered by section 1237, nor may he hold in the year of sale any other real property for such purpose; (2) the taxpayer has made no substantial improvement to the property that substantially enhances the value of the lots or parcels sold; and (3) the taxpayer held the property for at least 5 years. Sec. 1237(a). On brief respondent concedes that petitioners met the requirement of not previously having held any part of the tract primarily for sale in the ordinary course of their trade or business or held any other property for that purpose. The parties stipulated that the property was acquired by petitioners in 1978. From this it follows that petitioners had held the property for more than 5 years in 1986. Therefore petitioners meet the requirement of holding the property for 5 years. Respondent contends that petitioners have not met the requirement of section 1237 that *117 they have not made substantial improvements to the property that substantially increased its value. Petitioners contend that the concrete road along with the other improvements made to the tract did not substantially enhance the value of the property sold. According to sec. 1.1237-1(c)(3)(i), Income Tax Regs., [2] the increase in value of the property caused by the improvements is the difference between the value of the property after the improvements and the value the property would have had if the improvements were not made. If the improvements increase the value of a lot by 10 percent or less, such increase will not be considered substantial in character. Otherwise, all relevant factors are to be considered in determining whether the improvements are substantial. Sec. 1.1237-1(c)(3)(ii), Income Tax Regs.
*118 The record contains proof of the value of the property after the improvements, but the record does not show what the value of the property would have been at the time of sale if the improvements had not been made. The improvements were completed either in the latter part of 1985 or the early part of 1986 at a cost of approximately $ 86,000. Petitioners' expert testified that in 1984 the value of the property would have been around $ 6,500 per acre without improvements. In 1984 petitioners sold some of the property for $ 7,751.94 per acre. This sale was with a commitment to make the improvements but the improvements had not actually been made. However, if the $ 6,500 is accepted, the committed improvements increased the value of the property. In 1986 after the improvements were complete, some of the property was sold for $ 11,824.42 per acre. Petitioners' expert also testified that during the period between 1984 and 1987, the value of real estate in Forney, Texas, increased. This expert estimated the increase at about 40 percent. While we do not give the weight to this expert's testimony we would give if it were better documented, we do note that if his estimate of $ 6,500 *119 per acre for petitioners' land in 1984 unimproved and the 40-percent increase are accepted, the unimproved value in 1986 would be $ 9,100 and the actual sales price of the improved property, $ 11,824.42, is well over the 10 percent which the regulations state would be substantial. There is nothing in this record to support a conclusion that the improvements to the land were not substantial and did not substantially increase the value of the property. In fact the evidence shows to the contrary. We also note that hard-surface roads and water lines are among the improvements that are generally considered "substantial" under section 1.1237-1(c)(4), Income Tax Regs.
Under a special provision in section 1237(b)(3), where property has been held for 10 years, improvements which are necessary to make the lot or parcel marketable at a prevailing local price for similar building sites will not be considered substantial. Since petitioners acquired the property in 1978 and sold the property here involved in 1986, they had not held it for 10 years and therefore the special rule in section 1237(b)(3) does not apply. Petitioners have failed to show that they have met the requirement of section *120 1237, that the improvements not be substantial and not substantially increase the value of the property. Petitioners' argument is geared entirely to the provisions of section 1237. However, if aside from the provisions of section 1237, petitioners did not hold the property for sale to customers in the ordinary course of their trade or business, it would appear to be a capital asset. We therefore consider it necessary to determine whether petitioners held the property in 1986 for sale to customers in the ordinary course of their trade or business. In their opening brief petitioners did not discuss this issue. Respondent devoted the major portion of her opening brief to this issue. In their reply brief petitioners devote about half of a page to replying to respondent's argument that the lots they held in the Lone Elm Estates in 1986 were held for sale to customers in the ordinary course of their trade or business. However, we conclude that they do not concede this issue and we will therefore address it. Initially we point out that on their 1987 return petitioners reported the sale of lots in the Lone Elm Estates on a Schedule C as a "residential development" business. Although *121 we have considered this fact we have not given it much weight in light of the testimony of petitioners' accountant that in 1987 it did not matter how these sales were reported. Section 1001 provides in general for the recognition of any gain or loss on the disposition of property. [3] *122 The gain or loss recognized under section 1001 is characterized as either ordinary or capital. Section 1202(a), as in effect during 1986, allowed a taxpayer to deduct from gross income 60 percent of net long-term capital gains. [4] Capital gains result from the sale of a capital asset. Sec. 1222(11). A capital asset is defined as including any "property held by the taxpayer (whether or not connected with his trade or business)" except for five specific classes of property mentioned in the statute. Sec. 1221; [5]Arkansas Best Corp. v. Commissioner, 485 U.S. 212, 215-216 (1988). Section 1221(1) mentions as one of the excluded classes of property any "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business". This is the exclusion which respondent contends applies to petitioners' property. In Malat v. Riddell, 383 U.S. 569, 572 (1966), the Supreme Court explained the purpose of section 1221(1) as follows: The purpose of the statutory provision * * * is to differentiate between the "profits and losses arising *123 from the everyday operation of a business" on the one hand ( Corn Products Refining Co. v. Commissioner of Internal Revenue, 350 U.S. 46, 52) and "the realization of appreciation in value accrued over a substantial period of time" on the other. ( Commissioner of Internal Revenue v. Gillette Motor Transport, Inc., 364 U.S. 130, 134.)
Whether property is held by a taxpayer primarily for sale to customers in the ordinary course of his trade or business is essentially a factual question. Guardian Industries v. Commissioner, 97 T.C. 308, 316 (1991). In determining whether property is held primarily for sale in the ordinary course of a taxpayer's trade or business, we must first determine whether that taxpayer's activities with respect to the property constitute a trade or business. In order to be considered to be engaged in a trade or business: the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not *124 qualify. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).
The extent of development activity and improvements is an important factor in deciding whether a real estate activity is a trade or business. Suburban Realty Co. v. United States, 615 F.2d 171, 178 (5th Cir. 1980). Petitioners' real estate activities were more than a sporadic activity or hobby. Petitioners made substantial changes to the property and sold several lots. Also, for 1986, most of petitioners' income was the gain from the sale of the real estate. The record does not show the time devoted by petitioners to the real estate activity. In a real estate activity the following factors, among others, should be considered in determining whether the property was held for sale in the ordinary course of a taxpayer's trade or business: (1) The nature and purpose of the acquisition of the property and the duration of the ownership; (2) the extent and nature of the taxpayer's efforts to sell the property; (3) the number, extent, continuity and substantiality of the sales; (4) the extent of subdividing, developing and advertising to increase sales; (5) *125 the use of a business office for the sale of the property; (6) the character and degree of supervision or control exercised by the taxpayer over any representative selling the property; and (7) the time and effort the taxpayer habitually devoted to the sales. United States v. Winthrop, 417 F.2d 905, 910 (5th Cir. 1969). The seven factors listed above are not the only factors that may be considered. For instance, the amounts of income from the taxpayer's other businesses as compared to the income from the property transactions can be significant in some cases. Real Estate Corp. v. Commissioner, 35 T.C. 610, 615-616 (1961), affd. 301 F.2d 423 (10th Cir. 1962); Hoover v. Commissioner, 32 T.C. 618, 627-628 (1959). Some cases have placed a greater emphasis on the factors of the frequency and substantiality of sales, improvements to the property, solicitation and advertising efforts, and brokerage activities than on the other factors present. Byram v. United States, 705 F.2d 1418 (5th Cir. 1983); Suburban Realty Co. v. United States, supra; *126 Biedenharn Realty Co. v. United States, 526 F.2d 409, 415-419 (5th Cir. 1976). This record is lacking in evidence with respect to most of the factors listed above. Most of the evidence in this case deals with whether petitioners' improvements to the property substantially increased its value causing the benefit of section 1237 not to be available to petitioners. There is no showing in this record of the time petitioner spent in connection with the sale of the lots. The record does not show to what extent they advertised the lots for sale. The burden to show that the sales were of a capital asset is on petitioners and they have not met this burden. Based on the evidence in this record, we hold that petitioners held the property primarily for sale to customers in the ordinary course of their trade or business. Therefore the 1986 gain was not a capital gain, but was ordinary income. Section 6653(a)(1) and (2) additions: Respondent determined that the underpayment of tax for 1986 was due to negligence or intentional disregard of rules and regulations. Section 6653(a)(1)(A)[6] provides that a 5-percent addition to tax shall be imposed if any *127 part of the underpayment of taxes is due to negligence or intentional disregard of rules or regulations. Negligence is the failure to use due care or to do what a reasonable and ordinarily prudent person would do in a similar situation. Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. and remanding in part 43 T.C. 168 (1964). Petitioners bear the burden of proving that they were not negligent. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). *128 The record indicates that the 1986 return was prepared by a C.P.A. for petitioners. As stated in United States v. Boyle, 469 U.S. 241, 251 (1985): When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. * * *
In prior cases, we have held that reasonable reliance on experts suffices to avoid the addition to tax for negligence. Industrial Valley Bank & Trust Co. v. Commissioner, 66 T.C. 272, 283 (1976); Conlorez Corp. v. Commissioner, 51 T.C. 467, 475 (1968); Woodbury v. Commissioner, 49 T.C. 180, 200 (1967). The expert advice given to petitioners was incorrect, but we are convinced that for 1986 petitioners relied upon that advice and acted in good faith both as to the reporting of the income from the sale of lots as capital gains and as to items conceded by petitioner. The conceded items were not amounts not expended by petitioners, *129 but were items misclassified on the 1986 return. Classification of expenditures as to the appropriate category for the expense is a decision with respect to which a reasonable person might rely on his accountant's advice. Therefore, we hold that petitioners were not negligent and are not liable for the additions to tax under section 6653(a)(1) for 1986. We are convinced that petitioners' underpayment in 1986 was due to a good faith misunderstanding of the law. Wofford v. Commissioner, 5 T.C. 1152, 1166-1167 (1945). The issue of capital gain versus ordinary gain, is sufficiently complex to justify petitioners' reliance on their return preparer. See Yelencsics v. Commissioner, 74 T.C. 1513, 1533 (1980); Marcello v. Commissioner, 43 T.C. 168, 182 (1964), affd. in part and remanded in part 380 F.2d 499 (5th Cir. 1967). Since we have concluded that no part of petitioners' underpayment of tax for 1986 was due to negligence, there is no addition to tax under section 6653(a)(1)(B) for that year. Section 6661(a) Substantial Understatement: Section 6661(a) imposes *130 an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. An appeal in this case will be to the Court of Appeals for the Fifth Circuit. In Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408, the Fifth Circuit held that "Applying the I.R.S.'s own regulatory standards" the Commissioner abused her discretion in failing to waive the addition to tax under section 6661 based on a record that showed the taxpayer's reliance on a financial advisor and an accountant. In this case, following the holding of Heasley v. Commissioner, supra, we conclude that petitioners are not liable for the addition to tax under section 6661(a). Golsen v. Commissioner, 54 T.C. 742 (1970), affd. on another issue 445 F.2d 985 (10th Cir. 1971). Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the full deficiency.↩
1. SEC. 1237. REAL PROPERTY SUBDIVIDED FOR SALE. (a) GENERAL. -- Any lot or parcel which is part of a tract of real property in the hands of a taxpayer other than a corporation shall not be deemed to be held primarily for sale to customers in the ordinary course of trade or business at the time of sale solely because of the taxpayer having subdivided such tract for purposes of sale or because of any activity incident to such subdivision or sale, if -- (1) such tract, or any lot or parcel thereof, had not previously been held by such taxpayer primarily for sale to customers in the ordinary course of trade or business (unless such tract at such previous time would have been covered by this section) and, in the same taxable year in which the sale occurs, such taxpayer does not so hold any other real property; and (2) no substantial improvement that substantially enhances the value of the lot or parcel sold is made by the taxpayer on such tract while held by the taxpayer or is made pursuant to a contract of sale entered into between the taxpayer and the buyer. For purposes of this paragraph, an improvement shall be deemed to be made by the taxpayer if such improvement was made by -- (A) the taxpayer or members of his family (as defined in sec. 267(c)(4)), by a corporation controlled by the taxpayer, or by a partnership which included the taxpayer as a partner; or (B) a lessee, but only if the improvement constitutes income to the taxpayer; or (C) Federal, State, or local government, or political subdivision thereof, but only if the improvement constitutes an addition to basis for the taxpayer; and (3) such lot or parcel, except in the case of real property acquired by inheritance or devise, is held by the taxpayer for a period of 5 years.↩
2. Sec. 1.1237-1(c)(3)(i), Income Tax Regs., states in relevant part: The increase in value to be considered is only the increase attributable to the improvement or improvements. Other changes in the market price of the lot, not arising from improvements made by the taxpayer, shall be disregarded. The difference between the value of the lot, including improvements, when the improvement has been completed and an appraisal of its value if unimproved at that time, will disclose the value added by the improvements.↩
3. SEC. 1001. DETERMINATION OF AMOUNT OF AND RECOGNITION OF GAIN OR LOSS. (a) COMPUTATION OF GAIN OR LOSS. -- The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized. * * * (c) RECOGNITION OF GAIN OR LOSS. -- Except as otherwise provided in this subtitle, the entire amount of the gain or loss, determined under this section, on the sale or exchange of property shall be recognized.↩
4. Sec. 1202 was repealed by sec. 301 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2216, for taxable years beginning after December 31, 1986.↩
5. SEC. 1221. CAPITAL ASSET DEFINED. For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include -- (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; (2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or real property used in his trade or business;↩
6. SEC. 6653. ADDITIONS TO TAX FOR NEGLIGENCE AND FRAUD. (a) NEGLIGENCE. -- (1) IN GENERAL. -- If any part of any underpayment (as defined in subsection (c)) is due to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to the sum of -- (A) 5 percent of the underpayment, and (B) an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of such underpayment which is attributable to negligence for the period beginning on the last date prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax).
(2) UNDERPAYMENT TAKEN INTO ACCOUNT REDUCED BY PORTION ATTRIBUTABLE TO FRAUD. -- There shall not be taken into account under this subsection any portion of an underpayment attributable to fraud with respect to which a penalty is imposed under subsection (b). (3) NEGLIGENCE. -- For purposes of this subsection, the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term "disregard" includes any careless, reckless, or intentional disregard.↩